**UNITED STATES of America, Plaintiff,**

v.

**JACKSONVILLE TERMINAL COMPANY et al., Defendants.**

**No. 68–239–Civ–J–S.**

United States District Court, M. D. Florida, Jacksonville Division.

Feb. 14, 1973.

As Amended March 13, 1973.

See also D.C., 351 F.Supp. 452.

William B. Fenton, Atty., U. S. Dept. of Justice, Washington, D. C., Asst. U. S. Atty. John D. Roberts, Jacksonville, Fla., for plaintiff.

William J. Hickey, Washington, D. C., William H. Adams, III, Guy O. Farmer, II, Jacksonville, Fla., William J. Donlon, Gen. Counsel, Brotherhood of Railway, Airline and Steamship Clerks, O'Hare International Transp. Center, Rosemont, Ill., Robert Hart, Gen. Counsel, United Transportation Union, Cleveland, Ohio, Harold L. Russell, Atlanta, Ga., Luke G. Galant, Jacksonville, Fla., Clarence M. Mulholland, Richard R. Lyman, Richard M. Colasurd, Toledo, Ohio, Harold A. Ross, Cleveland, Ohio, Delbridge L. Gibbs, Jacksonville, Fla., for defendants.

## FINAL JUDGMENT

CHARLES R. SCOTT, District Judge.

This cause being before the Court on remand from a decision of the United States Court of Appeals for the Fifth Circuit (451 F.2d 418) affirming and reversing in part the decision of this Court (316 F.Supp. 567) and the Court of Appeals having found that the record supported a conclusion that the defendants had engaged in racially discrimina-

tory employment practices prior to the enactment of the Civil Rights Act of 1964, as amended, the effects of which have been perpetuated since the effective date of the Act, resulting in a denial of equal employment opportunities for black employees of the Jacksonville Terminal Company (hereinafter the Terminal), and having ordered this Court to enter a decree in conformity with the opinion of the majority of the Court of Appeals, and this final judgment being in conformity therewith, now, therefore, it is hereby

Ordered and adjudged:

That the defendants: Jacksonville Terminal Company (hereinafter the Terminal); United Transportation Union (including the former Brotherhood of Locomotive Firemen and Enginemen and Brotherhood of Railroad Trainmen); Railroad Yardmasters of America; Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Stations Employes (including the Transportation-Communication Employes Union, now affiliated with the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employes); Brotherhood of Locomotive Engineers; Brotherhood at Maintenance of Way Employes; American Railway Supervisors Association; Brotherhood of Railroad Signalmen of America; International Association of Machinists and Aerospace Workers; International Brotherhood of Electrical Workers; Brotherhood of Railway Carmen of America; International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, and Helpers; Sheetmetal Workers International Association; International Brotherhood of Firemen, Oilers, Helpers, Roundhouse and Railway Shop Laborers; and System Federation No. 50 of the Railway Employees' Department, AFL–CIO, their officers, agents, employees, servants and all other persons and organizations in active concert or participation with them are hereby permanently enjoined and restrained from engaging in any employment practice which discriminates against blacks on account of their race or which perpetuates the unlawful effects of any past discrimination, and, in particular, it is

Ordered:

That

## I.

The provisions of this final judgment relating to seniority rights and transfer and promotion are based upon the facts of this case, and shall be applied only to the Terminal, and not to any other railroad; for the opinion of the Court of Appeals expressly provides:

[i]t should be self-evident that our decision with respect to seniority rights and transfer and promotion restrictions applies only to their use at this single facility, not to the whole railroad world.

United States v. Jacksonville Terminal Co., 451 F.2d 418, 455 (5th Cir. 1971).

## II.

(A) The phrase "Affected Group" as used hereinafter shall mean all black employees of the defendant Terminal who were hired prior to July 2, 1965, who as of the date of entry of this final judgment had an employment relationship with Terminal, and who did not occupy on the date of the entry of this final judgment jobs in crafts or classes wherein most of the jobs on that date were held by white Terminal employees and, for the purposes of transfers from Group 3 jobs to Group 1 jobs in the Terminal Baggage and Mail Department, all black employees of the Terminal who were hired into Group 3 jobs in that department subsequent to July 2, 1965, and during the time the Terminal had in effect its Personnel Test in that department.

(B) The term "vacancy" as used hereinafter shall mean all job openings in positions subject to a collective bargaining agreement which are open to bids. The term "vacancy" shall not include job openings caused by rescheduling or "reshuffling" of jobs or rear-

rangement of the work forces within a certain craft or class which do not involve putting additional men to work. The existence of furloughed employees on the seniority roster where a job opening occurs shall not preclude a job opening from being treated as a vacancy. However, where there is a furloughed employee on the seniority roster when the opening occurs who shall have been on furlough for ninety (90) days or less, the opening shall not be treated as a vacancy under this paragraph, but may be treated as an opening caused by rescheduling or "reshuffling" of jobs or rearrangement of the work forces.

(C) The term "terminal seniority" as used herein shall mean the earliest seniority date held by a Terminal employee on any of the Terminal's seniority rosters in effect on the effective date of this final judgment.

## III.

(A) Before filling any vacancy as defined in paragraph II(B) above in a craft or class which was occupied generally by whites as of July 2, 1965, the Terminal shall follow the procedures hereinafter set forth and award the vacancy in accordance with the terms of this final judgment, unless no member of the Affected Group bids for the position after the posting of notices as required by paragraphs III(B) and III(C) below.

(B) The Terminal shall continue to post notices of all vacancies, as the term "vacancy" is defined in II(B) hereof, on all bulletin boards and in all bulletin books maintained for employees: all other vacancies shall be bulletined in accordance with the terms of the applicable collective bargaining agreements.

(C) Each notice of a vacancy shall set forth a brief description of the job, its rate of pay, the minimum requirements for the job, including any qualification requirements contained in the applicable collective bargaining agreement, and a statement of the nature and extent of the training, if any, which will be provided to the successful bidder. In addition, notices of vacancies occurring in the following jobs listed in Col. I shall state that railroad experience in the indicated jobs, Col. II, or equivalent experience obtained elsewhere, will be deemed necessary and relevant (formal training or technical education may be considered as a substitute for experience):

| Department | COL. I<br>Job | COL. II<br>Indicated Job |
|---|---|---|
| Transportation | Conductor | Switchman |
| | Engineer or Hostler | Fireman or Hostler Helper |
| | Train Director | Assistant Train Director |
| Mechanical | Journeyman (Carman, Machinist, Electrician, Pipefitter-Sheet Metal Worker) | Helper-Apprentice, Upgraded Helper or Apprentice |
| Signal | Leading Signalman or Leading Signal Maintainer | Signal Maintainer and Assistant Signal Maintainer or Assistant Signalman |
| | Signalman or Signal Maintainer | Assistant Signalman or Assistant Signal Maintainer or Signal Helper |
| Maintenance of Way | Track Foreman | Assistant Track Foreman or Apprentice Track Foreman or Track Laborer |
| | Bridge & Building Foreman | Assistant Bridge & Building Foreman or B & B Mechanic or B & B Laborer |
| | Welder | Welder Helper |

(D) Vacancies in all jobs described in paragraph III(A) above shall be filled in the following manner:

1. All members of the Affected Group shall be entitled to bid on any vacancy outside their craft or class, using

their terminal seniority for bidding purposes, until they successfully bid for and retain, after any on-the-job probationary or training period (if required), a position outside the craft or class which they occupy on the date of entry of this final judgment. A member of the Affected Group shall use his terminal seniority only once to gain and retain a position in another craft or class. Once within another of such craft or class, when applicable collective bargaining agreements or Terminal policy permit the use of craft or class seniority to bid for vacant jobs outside the craft or class, members of the Affected Group shall utilize terminal seniority in lieu of such craft or class seniority.

2. All non-members of the Affected Group currently holding seniority on the roster where the vacancy exists shall be eligible to bid on the vacant job in accordance with the terms of the applicable collective bargaining agreement.

3. Commensurate with the requirements of paragraphs III(D)1 and III(D)2 above, whenever a member of the Affected Group is among those bidding, the job will then be awarded to the qualified employee with the earliest terminal seniority date of those eligible to bid.

4. If no member of the Affected Group bids for a vacancy, the position shall be filled in accordance with the applicable collective bargaining agreement or by utilization of the Terminal's "best qualified" standard.

5. The Terminal shall determine and evaluate the qualifications of the bidders for each vacancy. If the Terminal finds that the bidder with the earliest terminal seniority date does not possess sufficient fitness and ability to adequately perform the job, it may refuse to award him the position or disqualify him at any time during the on-the-job probationary or training period, if any, in accordance with the terms of the applicable collective bargaining agreement, or, if none, such other probationary or training period as may be customarily afforded by the Terminal. When the Terminal decides that a bidder with the earliest terminal seniority date is unqualified to hold a job, it must inform him in writing. Such writing shall detail the employer's reasons for the rejection. The Terminal will retain copies of any such notices and make them available to plaintiff upon request. In evaluating requisite previous experience where such is necessary in those jobs identified in paragraph III(C) above, the Terminal shall not limit its evaluation to railroad experience.

6. When the Terminal finds that an employee does not possess sufficient fitness and ability to adequately perform the job, he may be disqualified and shall be returned to his former position, and reestablish his original seniority date in his former job and craft or class. Utilizing the procedure set forth in III(A) through III(D) above, the Terminal may then fill the vacancy with the qualified employee possessing the earliest terminal seniority date.

7. If the vacancy is in a position listed in paragraph III(C) above for which there is a necessarily prerequisite job, experience and/or training at the Terminal or in the railroad industry, the category of persons eligible to bid shall be limited to those persons who have held the prerequisite positions and who possess the necessary railroad experience and/or training.

(E) Whenever a member of the Affected Group bids for and is awarded a job in accordance with the procedure set forth in III(A) through III(D) above, he shall establish as his seniority date in his new job and on his new seniority roster the earliest seniority date which he holds on any of the Terminal's seniority rosters in effect on the date of the entry of this final judgment. The seniority date thus established shall be the only date used in determining that employee's right to promotion, demotion, layoff, furlough or any other right affected by seniority in his new craft or class, as set forth in the collective bar-

gaining agreement covering workers in that craft or class.

(F) Black Terminal employees who have already moved to jobs and/or to a craft or class which was occupied generally by whites as of July 2, 1965, shall also use their terminal seniority for all purposes, including promotion, demotion, layoff and furlough, in such jobs and/or crafts or classes.

(G) Whenever one or more members of the Affected Group are among the employees on a roster who are eligible to compete or to be considered for any purpose for which seniority is a factor, all employees involved, including non-members of the Affected Group on the roster, shall use their terminal seniority irrespective of whether or not a member of the Affected Group is the prevailing employee.

## IV.

■ (A) The Terminal shall not use its Baggage and Mail Department Personnel Test as a factor in determining the qualifications of any current or prospective employee to hold a Group I job until that test has been properly validated in accordance with the provisions set forth in the Equal Employment Opportunity Commission's Guidelines on Employee Selection Procedures, 35 F.R. 12333, et seq., 29 C.F.R. § 1607.1 to 1607.14. The Terminal shall not reinstitute the test or require any other tests for members of the Affected Group unless contemporaneously hired white employees holding Group I positions are also required to pass the same test, properly validated, to retain those positions.

(B) The Terminal shall ascertain and publicize job related, objective qualification criteria for each Group I job.

## V.

(A) The Court is informed that a reasonable and adequate consolidation of the local lodges of the defendant Brotherhood of Maintenance of Way Employees (BMWE) and the Brotherhood

of Railway Carmen of America (BRAC) affording equitable representation has been effected.

(B) The defendant Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employes has informed the parties and the Court of the following:

Local Lodges 1575 and 1014 of the defendant Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employes have been consolidated effective January 1, 1972, through a transfer of all assets, liabilities and members of Local Lodge 1014 to Local Lodge 1575. The former Local Chairman of Local Lodge 1014 has been appointed to the Protective Committee of Local Lodge 1575 and designated as Assistant Local Chairman. A former member of the Board of Trustees of Local Lodge 1014 is now a member of the Board of Trustees of Local Lodge 1575 and the former Legislative Representative of Local Lodge 1014 is now the Legislative Representative of Local Lodge 1575. Local Lodge jurisdiction has been declared and all employees of the craft and class represented by said defendant will secure Local Lodge representation through Local Lodge 1575.

The above represents a reasonable and adequate consolidation of Local Lodges 1575 and 1014.

■ (C) The defendant United Transportation Union shall invite any black Yardmen working for the Terminal at the time of, or subsequent to, the date of entry of this final judgment to become members.

## VI.

■ The Terminal shall take reasonable steps to ensure the complete desegregation of its toilet, locker and shower facilities and it shall immediately remove the partition which divides the facility identified by the number 4 on Government Exhibit 3 into two separate facilities. If partitions separating employees by race or color have been re-

moved, or if the facilities on one side of such partitions have been closed and are no longer in use, the requirements of this paragraph have been met. The Terminal shall, within 15 days of the date of this final judgment, post signs in a conspicuous place at each toilet, locker and shower facility, advising employees that they may use any such facility at the Terminal without regard to race or color.

## VII.

(A) The Terminal shall serve copies of the following reports on plaintiff: On April 1, July 1, October 1 and January 1 of each year, the Terminal shall report all job vacancies as described in paragraph II(A) above which have occurred since the entry of this final judgment or its last report. This report shall include: (a) the job title and department of the vacant job; (b) the name, race and hire date of the employee awarded the vacancy; (c) the name, race, terminal seniority date and present job of every person who bid on the vacant job; and (d) the reason for not awarding the vacancy to any member of the Affected Group, if any unsuccessfully bid on the job.

(B) The Terminal shall provide plaintiff with copies of each of its annual and/or semi-annual seniority rosters with the race of all employees thereon indicated.

(C) If the plaintiff believes that a transfer or promotion decision has been based on qualification criteria proscribed under Title VII, the plaintiff shall give written notice to the defendants and attempt to resolve any differences, provided that if the differences are not resolved within 60 days, the plaintiff may thereupon file an appropriate motion in this Court.

## VIII.

The Terminal shall post copies of this final judgment on all bulletin boards and in all bulletin books maintained for employees and make additional copies available in its personnel office for any interested person. The Terminal shall post on all bulletin boards and in all bulletin books maintained for employees notices stating that the effect and operation of this final judgment will be explained to any interested person upon request by the Terminal's personnel office.

## IX.

The Court shall retain jurisdiction of this action for entry of any other orders which may be necessary or appropriate to insure compliance with the provisions of this final judgment. At any time after five (5) years from the date of entry of this final judgment, the defendants, or any of them, may move, upon sixty (60) days' notice to plaintiff, for dissolution of this final judgment upon a showing that the provisions of the final judgment have been and are being complied with. However, the seniority rights granted members of the Affected Group shall not be subject to dissolution.

## X.

Except as otherwise provided herein, this final judgment is not intended to modify or change the application of provisions of the collective bargaining agreements entered into by the defendants, and with regard to the issues presented in this case continued application by defendants of the class/craft collective bargaining agreements pursuant to the Railway Labor Act shall be considered not to violate Title VII of the Civil Rights Act of 1964, and with regard to the issues presented in this case the seniority systems created thereby shall be considered bona fide under Title VII.

## XI.

Plaintiff's costs and disbursements in this action shall be taxed jointly and severally to the defendants.